1
2
3
4
5
6
7

8                    **IN THE UNITED STATES DISTRICT COURT**

9                    **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   WILLIAM GATES SNYDER III,                    CASE NO. CV F 10-1168 LJO SKO

12                    Plaintiff,                   **ORDER ON DEFENDANT'S F.R.Civ.P. 12 MOTION TO DISMISS**
13          vs.                                    (Docs. 4, 5.)

14   WACHOVIA MORTGAGE,

15                    Defendant.
                                              /
16

17                              **INTRODUCTION**

18          Defendant Wachovia Mortgage ("Wachovia") seeks to dismiss as meritless and preempted pro

19   se plaintiff William Gates Snyder III's ("Mr. Snyder's") claims arising from his Wachovia loan.  This

20   Court considered Wachovia's F.R.Civ.P. 12(b)(6) motion to dismiss on the record and VACATES the

21   August 12, 2010 hearing, pursuant to this Court's sua sponte dismissal of this action.

22                              **BACKGROUND**

23          Wachovia made to Mr. Snyder a loan secured by a deed of trust recorded on August 21, 2006.

24          On May 12, 2010, prior to Wachovia's removal, Mr. Snyder filed in Merced County Superior

25   Court his Judicial Council of California form complaint ("complaint").  As noted by Wachovia, the

26   complaint is "cryptic and confusing" with little facts and appears to take issue with Wachovia's failure

27   to modify Mr. Snyder's loan.  The complaint includes an "Exemplary Damages Attachment" which

28   claims "Defendant":

                                          1

1.   "[I]ntentionally had the Plaintiff believe the modified loan applied for was in fact in effect";

2.   "[I]ntentionally had the plaintiff perform many tasks in order to have him believe the Modified Loan was actually approved so the Defendant could foreclose on the property and gain profits through tax benefits and the profits of the sale of the property";

3.   "[I]ntentionally failed to contact the plaintiff informing him of the problem with the cosigner, into what account his checks were being credited, when they discontinued cashing his checks in a timely fashion in order to put the plaintiff's property in to [sic] foreclosure";

4.   "[I]ntentionally provoked the plaintiff into spending 150 hours on the phone, intentionally dropped calls or in writing in a futile effort designed to cause the Plaintiff to give up from frustration";

5.   "[H]ad the Plaintiff perform numerous meaningless tasks in order to defeat plaintiff's spirit and expedite foreclosure";

6.   "[K]ept insisting that Plaintiff should reapply numerous times in order for the Defendant to require the plaintiff to foreclose for failure to make payments, late charges, various fees, failure to pay insurance or taxes on the property"; and

7.   "[R]equired the cosigner to stay on the loan until April 2012."

The complaint purports to assert claims for general negligence, intentional tort, premises liability, breach of contract, and violation of California Civil Code sections 22317.5, 22327, 1695.1, and 2923.5.

## DISCUSSION

### F.R.Civ.P. 12(b)(6) Motion To Dismiss Standards

Wachovia faults the complaint's falling short of F.R.Civ.P. 8 pleading standards given its few factual allegations and improper reliance on "labels and legal conclusions which are not entitled to the presumption of truth." Wachovia seeks dismissal of the complaint's claims in "absence of allegations of fact demonstrating a plausible connection between plaintiff's alleged harm and Wachovia's conduct."

"A trial court may dismiss a claim sua sponte under Fed.R.Civ.P. 12(b)(6). . . . Such dismissal may be made without notice where the claimant cannot possibly win relief." *Omar v. Sea-Land Service,*

2

*Inc.*, 813 F.2d 986, 991 (9ᵗʰ Cir. 1987); *see Wong v. Bell*, 642 F.2d 359, 361-362 (9ᵗʰ Cir. 1981).  Sua sponte dismissal may be made before process is served on defendants.  *Neitzke v. Williams*, 490 U.S. 319, 324 (1989) (dismissals under 28 U.S.C. § 1915(d) are often made sua sponte); *Franklin v. Murphy*, 745 F.2d 1221, 1226 (9ᵗʰ Cir. 1984) (court may dismiss frivolous in forma pauperis action sua sponte prior to service of process on defendants).

A F.R.Civ.P. 12(b)(6) motion to dismiss is a challenge to the sufficiency of the pleadings set forth in the complaint. "When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one.  The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheurer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974); *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9ᵗʰ Cir. 1997).  A F.R.Civ.P. 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9ᵗʰ Cir. 1990); *Graehling v. Village of Lombard, Ill*., 58 F.3d 295, 297 (7ᵗʰ Cir. 1995).

In resolving a F.R.Civ.P. 12(b)(6) motion, a court must:  (1) construe the complaint in the light most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff can prove any set of facts to support a claim that would merit relief.  *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-338 (9th Cir. 1996).  Nonetheless, a court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9ᵗʰ Cir. 2008) (citation omitted).  A court "need not assume the truth of legal conclusions cast in the form of factual allegations," *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643, n. 2 (9ᵗʰ Cir.1986), and a court must  not "assume that the [plaintiff] can prove facts that it has not alleged or that the defendants have violated . . . laws in ways that have not been alleged." *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897 (1983).  A court need not permit an attempt to amend if "it is clear that the complaint could not be saved by an amendment."  *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9ᵗʰ Cir. 2005).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554,127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted). Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998). In practice, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562, 127 S.Ct. at 1969 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

In *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937,1949 (2009), the U.S. Supreme Court recently explained:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. (Citations omitted.)

After discussing *Iqbal*, the Ninth Circuit Court of Appeals summarized: "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 989 (9th Cir. 2009) (quoting *Iqbal*, __ U.S. __, 129 S.Ct. at 1949).

The U.S. Supreme Court applies a "two-prong approach" to address a motion to dismiss:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . . . Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine

4

1    whether they plausibly give rise to an entitlement to relief.

2    *Iqbal*, __ U.S. __, 129 S.Ct. at 1949-1950.

3         For a F.R.Civ.P. 12(b)(6) motion, a court generally cannot consider material outside the

4    complaint. *Van Winkle v. Allstate Ins. Co.*, 290 F.Supp.2d 1158, 1162, n. 2 (C.D. Cal. 2003).

5    Nonetheless, a court may consider exhibits submitted with the complaint. *Van Winkle*, 290 F.Supp.2d

6    at 1162, n. 2. In addition, a "court may consider evidence on which the complaint 'necessarily relies'

7    if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3)

8    no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450

9    F.3d 445, 448 (9th Cir. 2006). A court may treat such a document as "part of the complaint, and thus

10   may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *United*

11   *States v. Ritchie*, 342 F.3d 903, 908 (9th Cir.2003). Such consideration prevents "plaintiffs from

12   surviving a Rule 12(b)(6) motion by deliberately omitting reference to documents upon which their

13   claims are based." *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998).[1] A "court may disregard

14   allegations in the complaint if contradicted by facts established by exhibits attached to the complaint."

15   *Sumner Peck Ranch v. Bureau of Reclamation*, 823 F.Supp. 715, 720 (E.D. Cal. 1993) (citing *Durning*

16   *v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir.1987)). Moreover, "judicial notice may be taken

17   of a fact to show that a complaint does not state a cause of action." *Sears, Roebuck & Co. v.*

18   *Metropolitan Engravers, Ltd.*, 245 F.2d 67, 70 (9th Cir. 1956); *see Estate of Blue v. County of Los*

19   *Angeles*, 120 F.3d 982, 984 (9th Cir. 1997). A court properly may take judicial notice of matters of

20   public record outside the pleadings'" and consider them for purposes of the motion to dismiss. *Mir v.*

21   *Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988) (citation omitted).

22        With these standards in mind, this Court turns to Wachovia's challenges to the complaint's

23   claims.

24                              **Breach Of Contract**

25        Wachovia faults a purported breach of contract claim based on mere assertion of breach without

26

27        [1]    "We have extended the 'incorporation by reference' doctrine to situations in which the plaintiff's claim
     depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not
28   dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document
     in the complaint." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (citing *Parrino*, 146 F.3d at 706).

1   identification of an agreement.

2                                   *Elements And Pleading*

3          "The standard elements of a claim for breach of contract are: '(1) the contract, (2) plaintiff's

4   performance or excuse for nonperformance, (3) defendant's breach, and (4) damage to plaintiff

5   therefrom.'"    *Wall Street Network, Ltd. v. New York Times Co.*, 164 Cal.App.4th 1171, 1178, 80

6   Cal.Rptr.3d 6 (2008).  "To form a contract, an 'offer must be sufficiently definite . . . that the

7   performance promised is reasonably certain.'"    *Alexander v. Codemasters Group Limited*, 104

8   Cal.App.4th 129, 141. 127 Cal.Rptr.2d 145 (2002).

9          "As to the contract, where a written instrument is the foundation of a cause of action, it may be

10   pleaded in haec verba by attaching a copy as an exhibit and incorporating it by proper reference." *Byrne*

11   *v. Harvey,* 211 Cal.App.2d 92, 103, 27 Cal.Rptr. 110 (1962); *Holly Sugar Corp. v. Johnson,* 18 Cal.2d

12   218, 225, 115 P.2d 8 (1941).  "Where a party relies in his complaint upon a contract in writing, and it

13   affirmatively appears that all the terms of the contract are not set forth in hæc verba, nor stated in their

14   legal effect, but that a portion which may be material has been omitted, the complaint is insufficient."

15   *Gilmore v. Lycoming Fire Ins. Co.*, 55 Cal. 123, 124 (1880).

16          The complaint fails to allege breach of contract elements.  Alleged contract terms are unspecified.

17   Without specification of a contract or agreement, the elements necessarily fail.  As noted by Wachovia,

18   the claim fails to indicate whether the alleged agreement was written or oral to further doom the claim.

19   The breach of contract claim is subject to dismissal.

20                                   *Oral Modification Barred*

21          Wachovia explains that an oral contract after deed of trust execution is barred by the deed of

22   trust's modification clause which provides that "[t]his Security Instrument may be modified or amended

23   only by an agreement in writing signed by the Borrower and Lender."  Wachovia notes that California

24   Civil Code section 1624 requires a written modification in that the deed of trust "expressly provides"

25   to render an implied modification "unenforceable."  Wachovia is correct that the complaint's failure to

26   allege or identify a written modification dooms a claim based on modification.  *See Secrest v. Security*

27   *Nat'l Mortgage Loan Trust 2002-2*, 167 Cal.App.4th 544, 553, 84 Cal.Rptr.3d 275 (2008) (purported

28   forbearance agreement required to be in writing to satisfy statute of frauds).

                                            6

1    The complaint lacks a cognizable breach of contract claim.

2    **<u>Negligence</u>**

3    Wachovia argues that a negligence claim fails as a matter of law in that the complaint merely

4    checks the box for a negligence claim without supporting allegations.

5    "The elements of a cause of action for negligence are (1) a legal duty to use reasonable care, (2)

6    breach of that duty, and (3) proximate [or legal] cause between the breach and (4) the plaintiff's injury."

7    *Mendoza v. City of Los Angeles*, 66 Cal.App.4th 1333, 1339, 78 Cal.Rptr.2d 525 (1998) (citation

8    omitted). "The existence of a duty of care owed by a defendant to a plaintiff is a prerequisite to

9    establishing a claim for negligence." *Nymark v. Heart Fed. Savings & Loan Assn.*, 231 Cal.App.3d

10   1089, 1095, 283 Cal.Rptr. 53 (1991). "[A]bsent a duty, the defendant's care, or lack of care, is

11   irrelevant." *Software Design & Application, Ltd. v. Hoefer & Arnett, Inc.*, 49 Cal.App.4th 472, 481, 56

12   Cal.Rptr.2d 756 (1996). "The existence of a legal duty to use reasonable care in a particular factual

13   situation is a question of law for the court to decide." *Vasquez v. Residential Investments, Inc.,* 118

14   Cal.App.4th 269, 278, 12 Cal.Rptr.3d 846 (2004) (citation omitted).

15   "The 'legal duty' of care may be of two general types: (a) the duty of a person to use ordinary care

16   in activities from which harm might reasonably be anticipated [, or] (b) [a]n affirmative duty where the

17   person occupies a particular relationship to others. . . . In the first situation, he is not liable unless he is

18   actively careless; in the second, he may be liable for failure to act affirmatively to prevent harm."

19   *McGettigan v. Bay Area Rapid Transit Dist.*, 57 Cal.App.4th 1011, 1016-1017, 67 Cal.Rptr.2d 516

20   (1997).

21   There is no actionable duty between a lender and borrower in that loan transactions are arms-

22   length. A lender "owes no duty of care to the [borrowers] in approving their loan. Liability to a

23   borrower for negligence arises only when the lender 'actively participates' in the financed enterprise

24   'beyond the domain of the usual money lender.'" *Wagner v. Benson*, 101 Cal.App.3d 27, 35, 161

25   Cal.Rptr. 516 (1980) (citing several cases). "[A]s a general rule, a financial institution owes no duty of

26   care to a borrower when the institution's involvement in the loan transaction does not exceed the scope

27   of its conventional role as a mere lender of money." *Nymark*, 231 Cal.App.3d at 1096, 283 Cal.Rptr.

28   53; *see Myers v. Guarantee Sav. & Loan Assn.*, 79 Cal.App.3d 307, 312, 144 Cal. Rptr. 616 (1978) (no

1  lender liability when lender did not engage "in any activity outside the scope of the normal activities of

2  a lender of construction monies").

3       "Public policy does not impose upon the Bank absolute liability for the hardships which may

4  befall the [borrower] it finances." *Wagner*, 101 Cal.App.3d at 34, 161 Cal.Rptr. 516.  The success of

5  a borrower's investment "is not a benefit of the loan agreement which the Bank is under a duty to

6  protect." *Wagner*, 101 Cal.App.3d at 34, 161 Cal.Rptr. 516 (lender lacked duty to disclose "any

7  information it may have had").

8       Wachovia is correct that Mr. Snyder "pleads himself out of a duty of care" in that the complaint

9  "casts Wachovia in its conventional role as a mere lender."  The complaint lacks facts to support an

10  actionable duty to impose on Wachovia.  "No such duty exists" for a lender "to determine the borrower's

11  ability to repay the loan. . . . The lender's efforts to determine the creditworthiness and ability to repay

12  by a borrower are for the lender's protection, not the borrower's." *Renteria v. United States*, 452

13  F.Supp.2d 910, 922-923 (D. Ariz. 2006) (borrowers "had to rely on their own judgment and risk

14  assessment to determine whether or not to accept the loan").  Wachovia owed no duty of care to Mr.

15  Snyder.  The complaint lacks facts of special circumstances to impose duties on Wachovia in that the

16  complaint depicts an arms-length loan transaction, nothing more.  The complaint fails to substantiate

17  a special lending relationship or an actionable breach of duty to substantiate a negligence claim.  The

18  negligence claim fails.

19  **Intentional Tort**

20       The complaint's box for "intentional tort" is checked.  The complaint offers nothing to address

21  an intentional tort to warrant dismissal of a purported intentional tort claim.

22  **Premises Liability**

23       The complaint's box for "premises liability" is checked.  The complaint offers nothing to address

24  premises liability to warrant dismissal of a purported premises liability claim.

25  **California Civil Code Claims**

26       The complaint purports to assert claims under non-existent California Civil Code sections

27  22317.5 and 22327.  A purported claim under California Civil Code section 1696.1 fails in that the

28  statute merely sets out definitions regarding the home equity sales contracts chapter of the Civil Code.

1    Subpart (a)(2) of California Civil Code section 2923.5 ("section 2923.5") requires a "mortgagee,
2    beneficiary or authorized agent" to "contact the borrower in person or by telephone in order to assess
3    the borrower's financial situation and explore options for the borrower to avoid foreclosure." Section
4    2923.5(b) requires a default notice to include a declaration "from the mortgagee, beneficiary, or
5    authorized agent" of compliance with section 2923.5, including attempt "with due diligence to contact
6    the borrower as required by this section."

7    The complaint lacks allegations that Wachovia failed to comply with section 2923.5 or that his
8    loan is in default.  The complaint lacks a cognizable claim that Wachovia was required to modify Mr.
9    Snyder's loan in that section 2923.5 imposes no such mandate.  Section 2923.5 requires only contacts
10   or attempted contacts to "assess the borrower's financial situation and explore options for the borrower
11   to avoid foreclosure."  *See* Cal. Civ. Code, § 2923.5(a)(2).  An alleged section 2923.5 claim fails.

12   Wachovia further notes that a claim for damages under section 2923.5 is barred by privilege.

13   Non-judicial foreclosure sales "are governed by a 'comprehensive' statutory scheme. This
14   scheme, which is found in Civil Code sections 2924 through 2924k, evidences a legislative intent that
15   a sale which is properly conducted 'constitutes a final adjudication of the rights of the borrower and
16   lender.'" *Royal Thrift and Loan Co. v. County Escrow, Inc.*, 123 Cal.App.4th 24, 32, 20 Cal.Rptr.3d 37
17   (2004) (quoting *6 Angels, Inc. v. Stuart-Wright Mortgage, Inc.,* 85 Cal.App.4th 1279, 1283-1284, 102
18   Cal.Rptr.2d 711, fn. omitted (2001)).

19   Subsection (d) of California Civil Code section 2924 ("section 2924") renders as California Civil
20   Code section 47 "privileged communications" the "mailing, publication, and delivery" of foreclosure
21   notices and "performance" of foreclosure procedures.  The section 2924(d) privilege extended through
22   California Civil Code section 47 applies to tort claims other than malicious prosecution.  *Hagberg v.*
23   *California Federal Bank FSB*, 32 Cal.4th 350, 361 81 P.3d 244 (2004) ("As noted, the only tort claim
24   we have identified as falling outside the privilege established by section 47(b) is malicious
25   prosecution.")

26   Wachovia's alleged wrongs are subject to section 2924(d) immunity.  In the absence of
27   allegations of Wachovia's malice, section immunity 2924(d) bars purported claims based on cited
28   California statutes or related wrongs.

9

**Injunctive Relief**

Attached to the complaint is an "Application and Order for Reissuance of Order to Show Cause and Temporary Restraining Order" which seeks that "the property located at 3932 Finch Ct., Merced, CA 95340 will not be in foreclosure and William G. Snyder will remain owner and reside at property address." Wachovia contends that Mr. Snyder is not entitled to injunctive relief given the complaint's incurable deficiencies.

"Equity will not interpose its remedial power in the accomplishment of what seemingly would be nothing but an idly and expensively futile act, nor will it purposely speculate in a field where there has been no proof as to what beneficial purpose may be subserved through its intervention." *Karlsen, v. American Sav. & Loan Assn.*, 15 Cal.App.3d 112, 117, 92 Cal.Rptr. 851 (1971). "Injunctive relief is a remedy and not, in itself, a cause of action, and a cause of action must exist before injunctive relief may be granted." *Shell Oil Co. v. Richter*, 52 Cal.App.2d 164, 168, 125 P.2d 930 (1942).

Neither a viable claim nor "an independent duty" supports injunctive relief to doom the injunctive relief claim. In other words, the injunctive relief claim fails with the complaint's other claims.

**Federal Preemption**

Wachovia argues that all of the complaint's claims are preempted by the Home Owners Loan Act ("HOLA"), 12 U.S.C. §§ 1461, et seq., and its regulations given that Wachovia is a federal savings bank organized under HOLA and regulated by the Office of Thrift Supervision ("OTS").

Congress enacted HOLA "to charter savings associations under federal law," *Bank of America v. City and County of S.F.*, 309 F.3d 551, 559 (9th Cir. 2002), *cert. denied*, 538 U.S. 1069, 123 S.Ct. 2220 (2003), and "to restore public confidence by creating a nationwide system of federal savings and loan associations to be centrally regulated according to nationwide 'best practices,'" *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 160-161, 102 S.Ct. 3014 (1982). HOLA and its regulations are a "radical and comprehensive response to the inadequacies of the existing state system," and "so pervasive as to leave no room for state regulatory control." *Conference of Fed. Sav. & Loan Ass'ns v. Stein*, 604 F.2d 1256, 1257, 1260 (9th Cir. 1979), *aff'd*, 445 U.S. 921, 100 S.Ct. 1304. "[B]ecause there has been a history of significant federal presence in national banking, the presumption against preemption of state law is inapplicable." *Bank of Am.*, 309 F.3d at 559.

10

Through HOLA, Congress gave OTS broad authority to issue regulations governing thrifts. *Silvas v. E\*Trade Mortg. Corp.*, 514 F.3d 1001, 1005 (9th Cir. 2008) (citing 12 U.S.C. § 1464). OTS promulgated 12 C.F.R. § 560.2 ("section 560.2") as a preemption regulation, which "'has no less preemptive effect than federal statutes.'" *Silvas*, 514 F.3d at 1005 (quoting *de la Cuesta*, 458 U.S. at 153, 102 S.Ct. 3014)).

Section 560.2(a) provides in pertinent part:

> . . .OTS hereby occupies the entire field of lending regulation for federal savings associations. OTS intends to give federal savings associations maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation. Accordingly, federal savings associations may extend credit as authorized under federal law, including this part, without regard to state laws purporting to regulate or otherwise affect their credit activities, except to the extent provided in paragraph (c) of this section . . .

Section 560.2(b) provides "the types of state laws preempted" by section 560.2(a) include:

> (4) The **terms of credit**, including amortization of loans and the deferral and capitalization of interest and **adjustments** to the interest rate, balance, **payments due**, or term to maturity of the loan, including the circumstances under which a loan may be called due and payable upon the passage of time or a specified event external to the loan;
>
> (5) Loan-related fees, including without limitation, initial charges, late charges, prepayment penalties, servicing fees, and overlimit fees;
>
> . . .
>
> (9) Disclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents and laws requiring creditors to supply copies of credit reports to borrowers or applicants;
>
> (10) **Processing, origination, servicing,** sale or purchase of, or investment or participation in, mortgages . . . (Bold added.)

As noted by the Ninth Circuit Court of Appeals in *Silvas*, 514 F.3d at 1005, OTS has outlined a proper analysis to evaluate whether a state law is preempted under the regulation:

> When analyzing the status of state laws under § 560.2, the first step will be to determine whether the type of law in question is listed in paragraph (b). If so, the analysis will end there; the law is preempted. If the law is not covered by paragraph (b), the next question is whether the law affects lending. If it does, then, in accordance with paragraph (a), the presumption arises that the law is preempted. This presumption can be reversed only if the law can clearly be shown to fit within the confines of paragraph (c). For these purposes, paragraph (c) is intended to be interpreted narrowly. Any doubt should be resolved in favor of preemption.

OTS, Final Rule, 61 Fed.Reg. 50951, 50966-67 (Sept. 30, 1996).

11

1    Section 560.2(c) provides that the types of state laws "not preempted to the extent that they only

2    incidently affect the lending operations of Federal savings associations" include, contract, commercial,

3    real property and tort law.  If preemption arises under section 560.2(b), section 560.2(c)'s carve out does

4    not apply.  For instance, in *Silvas*, 514 F.3d at 1006, the Ninth Circuit applied section 560.2(b)

5    preemption to claims under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code, §§

6    17200, et seq., and explained: "We do not reach the question of whether the law fits within the confines

7    of [section 560.2(c)] because Appellants' claims are based on types of laws listed in paragraph (b) of

8    560.2, specifically (b)(9) and (b)(5)."

9    Wachovia notes that the complaint's claims address alleged failure to modify Mr. Snyder's loan

10   and ensuing foreclosure.  As such, Wachovia concludes that the claims "impose requirements" that

11   concern "terms of credit" (section 560.2(b)(4)) and "processing, servicing, sale of mortgages" (section

12   560.2(b)(10)).  HOLA preemption further warrants dismissal of the complaint's claims given that they

13   address loan modification and co-signer requirements.

14                    **Attempt At Amendment And Malice**

15   The complaint's claims are insufficiently pled and barred as a matter of law.  Mr. Snyder is

16   unable to cure his claims by allegation of other facts and thus is not granted an attempt to amend.

17   Moreover, this Court surmises that Mr. Snyder has brought this action in absence of good faith

18   and that Mr. Snyder exploits the court system solely for delay or to vex defendants.  The test for

19   maliciousness is a subjective one and requires the court to "determine the . . . good faith of the

20   applicant."  *Kinney v. Plymouth Rock Squab Co.*, 236 U.S. 43, 46 (1915); *see Wright v. Newsome*, 795

21   F.2d 964, 968, n. 1 (11th Cir. 1986); *cf. Glick v. Gutbrod*, 782 F.2d 754, 757 (7th Cir. 1986) (court has

22   inherent power to dismiss case demonstrating "clear pattern of abuse of judicial process").  A lack of

23   good faith or malice also can be inferred from a complaint containing untrue material allegations of fact

24   or false statements made with intent to deceive the court.  *See Horsey v. Asher*, 741 F.2d 209, 212 (8th

25   Cir. 1984).  An attempt to vex or delay provides further grounds to dismiss this action against Wachovia.

26                         **Motion To Strike**

27   Given dismissal of this action, this Court need not address Wachovia's companion F.R.Civ.P.

28   12(f) motion to strike portions of the complaint.

12

1

**CONCLUSION AND ORDER**

2      For the reasons discussed above, this Court:

3      1.    DISMISSES with prejudice this action against Wachovia; and

4      2.    DIRECTS the clerk to enter judgment in favor of defendant Wachovia Mortgage and

5      against plaintiff William Gates Snyder III and to close this action.

6      IT IS SO ORDERED.

7  **Dated:**    __**July 9, 2010**__           __**/s/ Lawrence J. O'Neill**__
                                         UNITED STATES DISTRICT JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

13